Bullard, j.
This controversy commenced by a petition and supplemental petition, presented by the widow of Silas F. Thomas, demanding that Patrick H. Glaze, who had been for several years administrator of the estate of Thomas, should render an account of his administration. She alleges herself to be the widow in community, and entitled to one-half of the net balance belonging to the estate,and she claims judgment for eight thousand dollars, with interest, from judicial demand. The heirs of Thomas were made parties to the proceeding, on the prayer of the widow, Atalanta Thomas.
*216 The administrator filed his account, supported by numerous vouchers, showing a balance in his favor, including his commissions, of $2600. This account was filed on the 1st February, 1841; and, in the petition accompanying the account, he prays for judgment for the balance in his favor, and for the homologation of the account.
On the 26th of February, the widow filed an opposition to the account, setting forth, at great length and with great minuteness, the alleged errors of which she complains. She concludes her opposition by praying : 1. That all items objected to as illegal claims against the estate, amounting in all to #22,146 72, alleged to have been paid by the administrator, be placed to the credit of the estate, and that the administrator be charged therewith. 2. That all claims due the estate, and uncollected for want of due diligence on the part of the administrator, amounting to $3182 63, be placed to the credit of the estate. 3. That the opponent be placed on the tableau for the sum of $12,664 67, and that she have judgment, for that amount.
Oakey also opposed what he calls the tableau, because he was a creditor of the estate, and not placed thereon ; and Kirkman, Knettles &. Co. opposed for the same reason.
At this stage of the proceedings commenced that confusion in which this case is involved. It arose from confounding this rendition of accounts by the administrator, at the suit of the heirs of the intestate, with a tableau of distribution filed by the administrator, or a preliminary statement of debts. It appears, that Glaze had gone on to settle the estate, having been a commercial partner of the deceased, without observing the usual forms of filing a tableau, and proceeding to classify the debts. The opposing creditors themselves had entered into private arrangements with the administrator, and had not provoked any tableau of distribution. The only question which was presented in relation to Oakey, and Kirkman, Knettles & Co. was, whether, as against the heirs of Thomas, the administrator was entitled to a credit for the amount of their claims, and that depended upon the question whether they had been paid. If the administrator had used the assets of the estate to discharge the debt, he was chargeable with them ; and if, without the fault of the heirs, those assets turned *217 out insufficient, the administrator might still be liable to the creditor. Admitting that a balance was still due, it appears to us irregular for those creditors to interfere in the way they have done, because no proceeding in this case can prejudice their claim against the estate. In this view of the case, there was, substantially, no error in dismissing their oppositions.
This confusion has arisen from another circumstance to which it is proper at this time to advert; and that is, that the widow supposed she might, in such a proceeding, be entitled to a judgment for a specific sum against the administrator, with interest, from judicial demand, and that she ought to be placed on the tableau for such amount, as if she were a creditor of the estate. The judgment finally rendered, has, to a certain extent, sanctioned these pretensions, and is, in that respect, clearly erroneous. The administrator owes but one account to the legal representatives of the deceased. The widow who accepts the community, is entitled to one-half of the balance found due, after a full administration and payment of all the charges of the estate ; but the account rendered, and finally approved contradictorily with the heirs and the widow, must ascertain the amount to which the widow is entitled. The Judge ought, in our opinion, to have established a balance due to the estate, and not a particular sum due to the widow; and that balance, if any, would bear an interest at five per cent, from the rendition of the account, and the widow would-be entitled to one-half of such balance.
It is conceded also, that there was error in disallowing the commissions of the administrator.
Having disposed of these matters, and expressed our view as to the relative position of the parties, and the character of the judgment which it would be proper to render, we come to consider one of the most important matters involved in the controversy, which is brought forward by an amendment to the administrator’s petition, praying for the homologation of his account.
On the 14th July, 1841, the administrator presented the amend, ed petition, in which he alleges, that he neglected, in his first account, to credit himself, and charge the estate, with five thousand dollars, as the price of a tract of land sold by him to the deceased,, *218 by act passed before R. B. Marshal],* June 5, 1835, better known as the town of Holmesville, together with a stock of merchandize. He alleges, that although the receipt of the price is acknowledged in the act, yet, in point of fact, nothing was ever paid, and the estate is still indebted to him that amount, with interest. He prays leave to amend his account, or tableav, accordingly. In order to prove this allegation, having taken no counter letter showing that the price had in fact not been paid, he puts interrogatories on facts and articles to each of the heirs, and to Atalanta Thomas, the widow. As the answer of the heirs, or their refusal or neglect to answer, could not affect the widow, and as the answer of Marshall, who is not an heir, is inadmissible to show simulation between the parties, we confine our attention to the interrogatories propounded to the widow herself, and her answers.
The interrogatories propounded to the widow are as follow :
1. Is it not of your knowledge, that Silas F. Thomas never paid Patrick H. Glaze the sum of five thousand dollars, mentioned in the act of sale of the Holmesville place ?
2. Did you, or not, shortly after the decease of your husband, while going to Opelousas, or some other place, with Mr. P. H. Glaze, state to him that you knew, or was aware, that Mr. Thomas had not paid Mr. Glaze the amount of five thousand dollars, the price stipulated in the said act of sale 1
3. Do you know that Mr. S. F. Thomas ever had, of his own, funds, at any one time, and especially on or before the 5th of June, 1835, the sum of five thousand dollars cash.
4. From the large amount uncollected of the sale of the preceding years, and the disbursements made for the purchase of new goods, and payments of old debts, could it have been possible for Mr. Thomas, on his own account, to have raised five thousand dollars on the 5th of June, 1835 ?
5. If you know that Mr. Thomas did pay the five thousand dollars mentioned, state when and in what manner ?
6. Please state if S. F. Thomas had any capital when he commenced merchandizing, and how much, and of what it consisted ?
*219 7. State if S. F. Thomas had any other source of revenue except the little store.
8. Please state what interest he had in the partnership with Glaze.
It is to be remarked, that the real estate here spoken' of, was sold as a part of the estate of Thomas, and the administrator charged himself in his account with the proceeds.
Atalanta Thomas answered to the 1st interrogatory : That she does not think that Silas F. Thomas paid for the same at the time of the sale; but thinks that Glaze was satisfied for it out of the proceeds of the store. To the 2d: That she does not know. To the 3d: That she does not know, but does not think he had. To the 4th: That she knows nothing relative to the firm of Glaze & Thomas; but with regard to Thomas, she heard, both from him and Glaze, that he, Thomas, had realized ten thousand dollars ; and she heard it in this way, viz. Glaze &, Thomas, on examining the books, declared the net profits, to be ten thousand dollars. To the 5th: That she does not know ; that she has heard so from P. H. Glaze since the institution of this suit. [The widow appears to have ¿nswered both the interrogatories propounded to the heirs and those to herself.] To the 5th, (addressed to herself,) she says, she has answered this previously. To the 6th, she answers, that she does not know, but does not believe he had any. To the 7th, she answers in the negative. To the 8th t That at one time he was in partnership with Glaze; towards the latter part of his life, he was doing business in his own individual name; when he was in partnership, does not know what was his interest therein.
If these answers clearly made out the simulation in the sale of the land, we should think the administrator entitled to the credit demanded. Without a counter letter, such evidence alone can be used, and it cannot be eked out by the testimony of witnesses. While the widow admits, that the price was probably not paid at the time of the sale, and that her husband was without means to raise that amount in money, yet, she thinks it was settled, and. that Glaze was satisfied out of the proceeds of the store. This is certainly not positive ; but coupled with the fact, that the interests of the parties were much blended together, and that when. *220 the account was first filed, the administrator charged himself with the proceeds of the same property as belonging to the estate, it leaves it so doubtful, as not to authorize us to disregard the formal acknowledgment in the deed that the price had been paid ; and the court did not err in rejecting the credit asked for.
Cushman, Waddill, H. Taylor, and iSwayze, for the appellant.
Edelen, for the appellee, A. Thomas.
Dunbar and Hyams, for the opposing creditors,
Thus, we are of opinion, that the court erred in giving judgment for a specific sum, in favor of the widow, with interest, from judicial demand, instead of striking a balance, if any there be, against the administrator, with interest, from the rendition of the account, on the balance so struck ; and also, in not allowing commissions. It is clear, the administrator is chargeable with such uneollected claims due to the estate as have been lost through his negligence, and it is incumbent on him to show diligence. He is entitled to be credited for every sum, justly due, which he has paid, or from which he has in any way liberated the estate. But such is the state of the record, and so numerous the items contested, that we are not able to apply the evidence in the record, so as to render a final judgment, without the hazard of great injustice to one or the other party. The case must, therefore, be remanded for further proceedings.
The judgment of the Court of Probates is, therefore, reversed; and it is further ordered and decreed, that the cause be remanded for a new trial, and further proceedings according to law, and that the appellee pay the costs of the appeal.

 Marsha!! was a notary, and the act an authentic one.